IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Fireman's Fund Insurance Company,                    Case No. 3:03CV7168

        Plaintiff

    v.                                                              ORDER

Hartford Accident and Indemnity Company,

        Defendant/
            Third-Party Plaintiff

    v.

Dana Corporation,

        Third-Party Defendant

This is an action for equitable contribution brought by plaintiff Fireman's Fund Insurance Company (FFIC), against defendant/third-party plaintiff Hartford Accident and Indemnity Company (Hartford) and by Hartford against third-party defendant Dana Corporation (Dana). Jurisdiction is proper under 28 U.S.C. § 1332.

Pending is Hartford's motion for partial summary judgment. [Doc. 222]. For the reasons given below, the motion shall be denied.

**Background**

Dana purchased primary insurance coverage from both FFIC and Hartford. FFIC's coverage spanned from 1966 to 1978, while Hartford provided coverage from 1978 to 1986.

In the 1980s, Dana faced potential asbestos liability resulting from its earlier ownership of Smith & Kanzler (S&K), a manufacturer and installer of asbestos-containing products. Those asserting claims against Dana *via* its ownership of S&K included: 1) individual building owners

alleging injury from S&K produced asbestos (asbestos-in-building, or AIB claims); and 2) the Celotex Corporation (Celotex), which in 1969 had acquired S&K from Dana, and Celotex's post-bankruptcy successor, the Celotex Trust. Both Celotex entities claimed that under the Dana-Celotex 1969 Stock Purchase Agreement (SPA) Dana had agreed to indemnify them for losses incurred as a result of liability attributed to S&K (SPA claims).

In 1983, Dana sued FFIC and Hartford in this court demanding coverage for two asbestos-related bodily injury claims from building owners in *Dana Corporation v. Fireman's Fund Insurance Company, et al.,* Case No. 83-1153 (1983 Case).[1] In a second amended complaint, Dana asserted a separate claim against Celotex over the interpretation of an indemnification provision in the 1969 SPA.

In 1984, Celotex filed suit against Dana in federal court in Florida requesting a declaration that Dana was required to indemnify Celotex for the S&K claims (Florida Action). Finding that this Florida action raised issues similar to those in the 1983 Action, this Court consolidated the two cases into one proceeding.

In 1985, Celotex filed suit against FFIC in California, seeking a declaration that it had coverage rights under FFIC policies. Dana also filed a declaratory action in California against FFIC and Hartford seeking coverage for AIB claims.[2] Both California suits were stayed.

---

[1] The two bodily-injury cases were *Lee, executrix, et al. v. Crown Cork & Seal Company, Inc.*, No. CV-283-168, filed in the United States District Court for the Southern District of Georgia, Brunswick Division (*Lee*) and *Brinegar v. Johns-Manville Corp.*, No. H-81-2126, filed in the United States District Court for the District of Maryland (*Brinegar*). Dana added a third bodily-injury claim in its first amended complaint filed in 1984: *Trent v. Armstrong World Industries, Inc.,* No. H-83-845, filed United States District Court for the District of Maryland (*Trent*).

[2] That case was captioned *Dana Corporation v. Fireman's Fund Insurance Company et al*, No. 604548-9, filed in the Superior Court of the State of California, in and for the County of Alameda.

Also in 1985, FFIC sued Dana, Celotex and an excess insurer in this court in *American Insurance Company v. The Celotex Corporation, et al.*, Case No. 85-7997 (1985 Case). FFIC sought, among other things, a declaration that its 1966 - 1969 policies with Dana did not cover claims for asbestos related property damage involving S&K products. Dana filed a counterclaim against FFIC in the 1985 Case.

In September, 1990, FFIC moved in the 1985 Case to join Hartford as an indispensable party to Dana's counterclaim or, in the alternative, dismiss Dana's counterclaim. The court in the 1985 Case never ruled on FFIC's motion to join Hartford. The court stayed the 1985 Case in October, 1990. In 1992 the court entered an order perpetually staying and closing the 1985 Case.

In this suit, FFIC asserts that Dana's potential liability from its putative indemnification agreement in the 1969 SPA with Celotex amounted to over $1 billion. FFIC also alleges that when facing this liability, Dana called on FFIC and Hartford to defend Dana fully—but only FFIC did so.

FFIC defended the suits against Dana under a reservation of rights to recover its expenditures from Dana if it later were determined that it was not obligated to provide coverage for any liability incurred by Dana to the S&K asbestos claimants. FFIC claims that it specifically reserved its right to recover from Hartford the costs incurred in defending Dana from those claims.

In 2001, the Sixth Circuit in *Dana Corp. v. Celotex Asbestos Settlement Trust*, 251 F.3d 1107, 2001 Fed.App. 0182P (6th Cir. 2001) (unpublished disposition), affirmed my ruling, *Dana Corp. v. Fireman's Fund Ins. Co.* 169 F.Supp.2d 732 (N.D. Ohio 1999), that the 1969 Dana/Celotex SPA did not require Dana to indemnify Celotex for liability Celotex incurred *via* its acquisition of S&K. This decision eliminated Dana's exposure to claims arising from its

3

ownership of S&K. None of the building claims resulted in a finding that Dana was vicariously liable for S&K, but four of those suits settled for a total of $1.1 million.

In 2003, FFIC filed a three-count complaint against Hartford requesting declaratory relief, contribution and subrogation in connection with defense and indemnity costs FFIC allegedly incurred on behalf of Dana in connection with the AIB and SPA claims. FFIC represents that it expended about $20 million (in addition to the $1.1 million in settlements) on defense costs.

In 2005, FFIC filed a motion to reactivate the 1985 Case, consolidate it with the 1983 Case and consolidate both cases with the 2003 action. I granted that motion.

Now pending is Hartford's motion for summary judgment seeking dismissal of the FFIC's claims for contribution as made in all suits pending before me.

## Discussion

### I. Standard of Review

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

4

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

## II. Statute of Limitations

Hartford requests summary judgment on the question of whether FFIC's claim is barred as untimely by O.R.C. § 2305.07.[3] That section provides, "an action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued."

The parties dispute whether this provision applies to a claim for equitable contribution. FFIC asserts that it does not, because its action is not one in contract, either "express or implied."

The conflict is rooted in the nature of the contribution claim. Hartford insists that a claim for equitable contribution is predicated upon an implied contract in law and therefore comes within § 2305.07. In support, it cites *Mallin v. Mallin*, 102 Ohio App. 3d 717, 721 (1995), and

---

[3] FFIC argues that Hartford should be equitably estopped from raising this argument because Hartford took active steps to induce FFIC to delay filing its action through the deferral agreement. Equitable estoppel may preclude a statute of limitations defense. *See e.g. Helman v. EPL Prolong, Inc.*, 139 Ohio App.3d 231, 245-46 (2000).

FFIC's assertion of equitable estoppel under Ohio law is unavailing. Estoppel is not available "where the circumstances surrounding the transaction are sufficient to put a person of ordinary prudence on inquiry which would have disclosed the facts." *Fifth Third Bank v. Lorance*, 2007 Ohio 4217, P26 (2007) (quoting *Pedler v. Aetna Life Ins. Co.* 23 Ohio St.3d 7, 11 (1986)).

FFIC delayed filing its contribution claim against Hartford for twenty years, without demanding concrete assurance from Hartford that it would not plead a statute of limitations defense. Nor has FFIC presented evidence that it at any point questioned Hartford to ascertain the continued existence of the stay agreement. FFIC cannot now invoke equitable estoppel to avoid a statute of limitations bar, were such applicable in this case.

cases cited therein. In *Mallin,* the court stated, "Contribution is an equitable doctrine in which the law implies a contract between the parties." (Citing *Baltimore & Ohio RR. Co. v. Walker,* 45 Ohio St. 577 (1888); *Travelers Indemn. Co. v. Trowbridge*, 41 Ohio St. 2d 11 (1975)); *see also* 66 Oh. Jur. Limitations and Laches § 20 (Where there is no express contract for contribution, an action for contribution comes within the six-year limitation for actions upon implied contracts) (citing O.R.C. § 2305.07.).

A recent Ohio Supreme Court decision calls this precedent into question.

In *Pa. Gen. Ins. Co. v. Park-Ohio Indus.*, 126 Ohio St.3d 98 (2010), the court resolved the issue of whether non-targeted insurers could use an untimely notice of claims as a defense to contribution. Holding that any untimeliness of notice from the insured to its primary carrier did not preclude that carrier from later seeking contribution from another insurer, the court stated that contribution rights of an insurer sound in equity. Consequently, the court continued, a claim for equitable contribution between insurers is "not a contract action." *Id.* at 101. In light of this most recent pronouncement, FFIC argues that the statute of limitations applicable to contracts, express or implied, should not bar this action.

No prior reported decisions have addressed the application of § 2305.07 to contribution claims, and I am reluctant to do so given the Supreme Courts opinion in *Park-Ohio, supra*.[4]

_____

[4] *See also*, *Fireman's Fund Ins. Co. v. United States Fid. & Guar. Co.*, No. 09-263, 2009 WL 2257393, *6-9 (D. Or. July 29, 2009), in which FFIC alleged that another insurance company (Travelers') wrongfully and without justification failed to pay a third-party insured on its claim for loss arising out of property damage. FFIC paid the claim and sought equitable contribution from Travelers, arguing that it had discharged both its and Travelers' duties to the third party relative to the property damage claim damage claim. Travelers' moved to dismiss the claim, contending that it was untimely under the Oregon code. The court determined that the claim was equitable in nature, and as such was subject to the doctrine of laches, not a statute of limitations. Applying that doctrine, the court looked to the analogous contract statute of limitations to determine the presumptively reasonable period within which one may file a claim in equity.

I note that a case cited by Hartford supports this conclusion. In *Cyphers v. Balzer*, 2007 WL 3409303, *4-5 (Ohio App.), the trial court had held, in a case arising out of the provisions of a negotiable instrument (and thus within the U.C.C.), that the equitable nature of the claim for contribution brought the issue of timely filing within the doctrine of laches, not a statute of limitations.

The appellate court acknowledged "[i]t is almost universally conceded that the doctrine of contribution is founded, not upon contract, but upon principles of equity and natural justice, which require that those who voluntarily assume a common burden shall bear it in equal proportions and that one party shall not be subject to bear more than his just share, to the advantage of his co-obligors." *Id*. at 23 (citing *Blumenthal v. Abrams* 1983 WL 4819 (Ohio. App.)).

The court determined, however, that "various aspects of the common law of contribution have been altered by statute," and that O.R.C. §§ 1303.14, 1303.16 provide a right of contribution in the context of negotiable instruments and a limitations period for enforcement of the right. *Id*. at *4. "Consequently," the court stated, "contribution, in the context of negotiable instruments, no longer depends solely upon or is derived solely from equity and natural justice, but is granted and governed by statute." *Id*.

Plaintiff can point to no comparable statute governing contribution between insurers. That being so, the plain language of the Ohio Supreme Court in *Park-Ohio, supra*, convinces me that application of § 2305.07 to bar this claim would be inappropriate.

I therefore deny Hartford's motion. I do not reach the issue of whether the doctrine of laches would bar this claim, because, as Hartford states in its briefs, "[w]hile a laches defense may not yet be ripe for summary judgment due to the phasing of discovery in this case, Hartford

is certainly entitled to elect to move for summary judgment now on the purely legal question as to the applicability of the statute of limitations." [Doc. 241, at 4 n.6].

### III. Relation Back

FFIC contends that its contribution claim is timely, regardless of the applicability of § 2305.07, because its contribution claim in the instant suit relates back to the 1983 and 1985 actions. I disagree.

Under Fed. R. Civ. P. 15(c)(1), an amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Hartford was not a party to the 1985 Case, which FFIC filed against Dana, Celotex and another of Dana's insurers in response to Dana's California state court suit. "The precedent of this circuit clearly holds that an amendment which adds a new party" —rather than substituting a correct party for an erroneous already-named party— "creates a new cause of action and there is no relation back to the original filing for purposes of limitations." *Asher v. Unarco Material*

8

*Handling, Inc*., 596 F.3d 313, 318 (6th Cir. 2010) (internal citation and quotations omitted). Consequently, FFIC's 2003 contribution claim cannot relate back to the 1985 Case for limitations purposes.[5]

While Hartford was a party to the 1983 Case, Hartford argues that case dealt narrowly with three asbestos bodily injury cases, and the pleadings in that case contained no coverage claims for the building claims or the SPA litigation.

Relation back is permitted when an amended pleading "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). FFIC argues that its cross- and counter-claims in the 1983 Case incorporated the SPA and building claims.[6] I have already determined, based on the plain language of the pleadings, that the only coverage claim FFIC asserted in the 1983 Case related solely to three asbestos bodily injury cases. [Doc. 223-1]. I decline to revisit that determination now, and find that relation back would not bar the running of the statute of limitations.

---

[5] FFIC argues that it filed a motion to join Hartford in the 1985 action, which Judge John W. Potter (to whom that case was assigned) stayed in 1990 when Celotex filed for bankruptcy. This argument is without merit, because the terms of the stay allowed the case to be reopened "upon written motion of plaintiff or any other proper party in interest after either a dismissal of the bankruptcy case, the granting of relief from the stay or for other good cause shown." [Doc. 241-19]; *see also, Krupski v. Costa Crociere SpA,*   U.S.  , 130 S. Ct. 2485 (2010) ("We agree that making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity.").

[6] FFIC asserted a combined cross-claim against Hartford and counterclaim against Dana wherein it solely sought subrogation from these parties—*i.e*., to recover "all sums" that it had expended or would expend for the three bodily injury cases.

9

### III. Stay Agreement

### A. Evidence of a Stay Agreement

FFIC argues that even if the statute of limitations were applicable, an oral, informal agreement between counsel for FFIC, Hartford and Dana to stay proceedings in the 1983 coverage action tolled the running of the statute of limitations, if any, *vis-a-vis* FFIC's present claims. According to FFIC, counsel for Dana and the two insurers in this case agreed in October, 1984, that a standstill as to the coverage issues would best serve the interests of all three entities.

Thereby, FFIC asserts, Dana, with FFIC providing the costs of defense, could focus on defeating the asbestos claims mounting against it.[7]

As evidence of the existence of the stay agreement, FFIC presents two 1984 letters, one from Dana's counsel and one from Hartford's attorney, a memorandum written by FFIC's counsel and a 1990 letter from Hartford's counsel. Two FFIC witnesses have also testified as to the existence of the agreement. Finally, FFIC argues that the behavior of the parties in choosing to litigate underlying liability and not coverage also demonstrates the agreement.

The 1984 memorandum from FFIC counsel states that the parties:

> agreed informally to defer the coverage dispute—if Dana wins on the Celotex issue, there is a feeling that the coverage issue can be resolved by some kind of handling arrangement similar to what is currently being done. (This may eventually come unstuck, of course, but there is clear agreement among the three parties to attack celotex first and defer consideration of the coverage issue.)

[Doc. 231-2].

---

[7] Regardless of the outcome on the now-contested question of whether the parties reached a stay agreement, it is clear that focusing on defeating Dana's asbestos claimant adversaries first worked. Though that effort took more than fifteen years, it proved ultimately successful when the Sixth Circuit upheld my dismissal of the claims, by then advanced by the Celotex Trust, under the S&K SPA.

In a letter to FFIC and Hartford, written soon after the October meeting, Dana's counsel stated, "We all agreed that there is no need for a written document reflecting our agreement to stay further action on the coverage issues in the Toledo case." [Doc. 231-3].

The contemporaneous letter written by Hartford's counsel states, "we all hope that the insurance coverage aspect of this litigation will be stayed for some time pending resolution of the Celotex-Dana indemnity issues," and discussed plans "in the event that the coverage litigation is reactivated in the future." [Doc. 231-5].

The 1990 letter to FFIC from Hartford's counsel allegedly manifests Hartford's continued desire to stay coverage litigation. In that letter, Hartford's counsel stated:

> It is clear to me that no useful purpose will be served by any type of litigation which does not focus attention on the indemnity issue. All the coverage decisions in the world will not serve to direct the parties to this controversy so long as the indemnity issues are not resolved either by legal decision or compromise.

[Doc. 232-8].

FFIC also presents deposition testimony from two FFIC counsel, Irving Faber and Phil Stahl.

Hartford denies that any evidence exists for the purported stay. In Hartford's estimation, the evidence presented by FFIC merely indicates, "at best . . . there was a legal strategy put in place to phase the 83 Case." [Doc. 241, at 30]. Hartford contends that references to the coverage issues in the "Toledo case" and "this litigation" in the Dana and Hartford letters refer solely to the three bodily injury claims in the 1983 Case, and did not encompass any property claims. Hartford argues that the only extant "Toledo litigation" in 1984 was the 1983 Case.

11

Hartford concludes that because I have already found that the building claims and SPA litigation were not at issue in the 1983 Case, these references cannot now be read to encompass the present contribution claims.

This argument is inconsistent with Hartford's earlier contention, which it made in the 1983 Case, in a joint opposition filed in 1999 with FFIC. In that pleading Hartford (and FFIC) stated that the issues in the 1983 and 1985 federal suits were "whether, and to what extent, Dana's primary insurers, [FFIC and Hartford], provide coverage to Dana *for Celotex's SPA claims*." [Doc. 233-8] (emphasis added).

The joint opposition continued: "both Dana's claim for insurance coverage from [FFIC and Hartford] relating to SPA asbestos property damage claims, and [FFIC's] counterclaim against Dana and cross-claim against Celotex relating to property claims (all in Case No.83-1153), remain pending for resolution in this Court." *Id.*

Hartford now disavows those statements. Nonetheless, they undercut Hartford's current argument that the 1983 and 1985 federal cases did not encompass the asbestos building and SPA indemnification claims.

Hartford also argues that any stay agreement was indisputably terminated when FFIC and Dana filed their 1985 coverage suits relating to the building claims and the SPA litigation. FFIC contends that those actions responded to, and sought to defeat Celotex's attempts at forum shopping in California and Florida and preserve Ohio as the forum for resolution of those claims.

In Hartford's view, FFIC has failed to come forward with even a scintilla of evidence

12

demonstrating the existence of a stay agreement applicable to the building claims and SPA litigation.[8]

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex, supra*, 477 U.S. at 323.

I find that FFIC has presented sufficient evidence to create genuine issues of material fact as to whether the parties agreed to defer certain limited coverage issues, and the scope of that agreement. Hartford's motion for summary judgment on this issue must, accordingly, be denied.

## B. Statute of Frauds

Hartford asserts that even if there had been an agreement to stay these coverage issues, any such agreement violated Ohio's Statute of Frauds, and is, therefore, unenforceable.

I disagree.

Under the Ohio Statute of Frauds, O.R.C. § 1335.05,

No action shall be brought whereby to charge the defendant .  .  . upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.

---

[8] Hartford chides FFIC for "essentially arguing that Hartford, as the movant, bears the burden of demonstrating the absence of any evidence of a stay[.] The notion that Hartford has the burden of proving that there was no stay agreement is not only untenable, it is impossible. A party cannot prove a negative, even if it is the movant on summary judgment." [Doc. 241 at 22]. This is, of course, precisely the summary judgment standard Supreme Court sets forth in *Celotex, supra*, 477 U.S. at 323 ("The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact.")

13

Where the time for performance under an agreement is indefinite, or depends on a contingency which might or might not happen within a year, the agreement does not fall within § 1335.05. *Sherman v. Haines,* 73 Ohio St. 3d 125, 127 (1995). FFIC argues that the Statute of Frauds is inapplicable here, because the contingency in question—resolution of the underlying liability litigation—could have happened within a year.

Hartford cites *Daup v. Tower Cellular, Inc*., 136 Ohio App. 3d 555, 565-566 (2000), for the proposition that where a defendant's obligation to perform under an oral agreement is contingent on the future acts of a third party and will continue for an indefinite period of time in the future, such contract falls within the Ohio Statute of Frauds. Hartford argues that the alleged stay agreement is unenforceable because it was an oral agreement, and depended on the actions of two third parties:  Celotex and the court.[9]

Ohio courts have not applied this *Daup* third-party exception to agreements dependent on the duration of litigation. For example, in *Mellino v. Kampinski Co.*, 163 Ohio App. 3d 163 (2005), the court found that the Statute of Frauds did not apply to an oral agreement between lawyers to pay a percentage of attorney's fees on favorable termination of a case. This was so, the court concluded, because "it is entirely possible that a case could be resolved" within a year, though the typical medical malpractice case does not resolve that quickly. *See also,* 4-19 *Corbin on Contracts* § 19.2 (It does not matter whether control over the condition's occurrence belongs to one or both of the parties or to a third party).

---

[9] This holding in *Daup* is the progeny of a 1957 New York State case, the holding of which seems only to have been applied to agreements to continue to pay service commissions after the termination of a salesperson's employment. *Zupan v. Blumberg* 161 N.Y.S. 2d 428 (1957).

14

I therefore find that the Celotex litigation, like the litigation in *Mellino, could* have been resolved within a year, no matter how unlikely that may have been or appeared at the time. Thus, the alleged stay agreement falls outside the Statute of Frauds. If a stay agreement arose and otherwise is enforceable, the Statute of Frauds does not preclude its enforcement.

### Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendant's motion for partial summary judgment [Doc. 222], be, and the same hereby is denied.

So ordered.

<u>s/James G. Carr</u>
Sr. U.S. District Judge

15